UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEHUA LIN, XIUFANG WU, and GUO CHEN, : <br> Plaintiffs, : <br> : <br> v. : 3:07-cv-1658 (CFD) <br> : <br> THOMAS M. BRENNAN, ELIAS B. : <br> REYNOLDS, E. GAYNOR BRENNAN, and : <br> MIANUS RIVER TAVERN, LLC, : <br> Defendants. : | |

## RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

Dehua Lin, Xiufang Wu, and Guo Chen ("Plaintiffs") brought this action against Thomas Brennan ("Brennan"), Gaynor Brennan, Elias Reynolds ("Reynolds"), and Mianus River Tavern, LLC (the "Tavern") for violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and the Connecticut Minimum Wage Act ("CMWA"), Conn Gen. Stat. §§ 31-58 et seq., as well as breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment and quantum meruit. Plaintiffs move for partial summary judgment on the FLSA and CMWA claims against the Tavern, Thomas Brennan, and Elias B. Reynolds ("Defendants") as well as Plaintiff Lin's breach of contract claim against the Tavern, and they have reserved their remaining claims. Defendants have not filed a response to the Motion for Partial Summary Judgment. For the reasons that follow, Plaintiffs' motion is granted.

**I.     Factual Background**[1]

The Tavern is an LLC formed in 1998 for the purposes of operating a restaurant, called

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Augie's Mianus River Tavern, in Cos Cob, Connecticut. The LLC initially consisted of five members, including the three individual defendants. After two years, two members withdrew, leaving the three individual defendants as the sole members of the LLC. Thomas Brennan and Reynolds made the initial investments and each had an ownership interest in the business. Brennan and Reynolds were in charge of much of the business, including employment decisions. While Brennan, Reynolds, and Gaynor Brennan were paid salaries, the other employees, including the Plaintiffs, were paid on an hourly basis based on weekly time cards.

According to Plaintiffs' observations and restaurant menus, The Tavern sold products from other states and countries and also purchased ingredients from out-of-state and national suppliers and food distributors. The Tavern had gross sales in excess of $500,000 for the relevant years. However, by 2007, the business faced financial problems, and the restaurant was forced to close as a result in May of 2007. Once the restaurant closed, the owners owed money to several creditors and owed employees a portion of their wages.

Plaintiff Lin began working for the Tavern as an assistant chef in 1998 and was promoted to chef in May of 2005. He was promised a salary increase to $14.50 per hour in August 2005 as a result of this promotion. Lin worked well over forty hours a week during his employment at the Tavern. For those forty hours per week, he was paid $13.00 per hour by check and $13.00 for any excess hours by cash until March 2006. After March 2006, he was paid $13.00 by check for the first thirty hours of work and then $14.50 per hour in cash for any excess hours. Lin worked for the Tavern until it closed in 2007.

Plaintiff Wu began working as an assistant chef for the Tavern in June 2005. She was paid a salary of $10.00 per hour in cash. Although she worked well over forty hours per week for

the duration of her employment, she was only paid for her first forty hours of work. She continued to work until the Tavern closed in 2007, at which point Defendants owed her back pay for eight weeks. Although Defendants eventually gave her a check for $1,500, Wu claims this did not cover the amount owed to her for those eight weeks of work.

Plaintiff Chen worked as an assistant cook for the Tavern starting in February 2007. He was paid $11.00 per hour in cash. Although Chen worked well over forty hours per week, he was only paid for those first forty hours. Chen worked until the restaurant closed in May 2007, at which point Defendants owed him eight weeks of back pay. Defendants later paid Chen $2,000, but Chen claims this amount did not cover the amount owed to him.

Plaintiffs filed a complaint in this Court on November 13, 2007. After a protracted discovery process, Plaintiffs moved for summary judgment on March 8, 2011. Defendants failed to respond to the Plaintiffs' Motion for Summary Judgment, in spite of the Court's order to respond by October 5, 2011.

## II. Discussion

### A. Legal Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the non-moving party must "set forth specific facts showing that there is a genuine issue

for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Even when a non-moving party fails to respond to the motion, this Court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (internal quotations omitted). "If the evidence submitted in support of the summary judgment motion does not been the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." Id. (internal quotations omitted). An unopposed motion for summary judgment motion can only be granted if the undisputed facts "'show that the moving party is entitled to summary judgment as a matter of law.'" Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) (quoting Fed. R. Civ. P. 56(c)).

In assessing the record, this Court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. Local Rule 56(a)(1) requires the moving party to file a statement setting forth "each material fact as to which the moving party contends there is no genuine issue to be tried," and "[a]ll material facts set forth in said statement will be deemed admitted unless controverted by" the non-moving party's statement. D. Conn. Loc. Civ. R. 56(a)(1)-(2). If the non-moving party fails to file both a memorandum in opposition to the Motion for Summary Judgment and a statement controverting the material facts in the moving party's statement, then the material facts set forth in the moving party's statement are deemed admitted to the extent that they are supported by the evidence in the record. Blalock v. Bender, 2006 WL 1582217, at *1

(D. Conn. 2006). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

This Court has original jurisdiction over "all civil actions arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Thus, since the Court has jurisdiction of the Plaintiffs' FLSA claim, the Court also has subject matter jurisdiction as these state law claims, which arise from a "common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

B.  FLSA

Plaintiffs contend that the Defendants violated the overtime provisions of the FLSA, which requires that employees who work longer than forty hours a week receive compensation for any excess hours at a rate of at least one and one-half times each employee's regular rate. 29 U.S.C. § 207(a)(1). To be held liable under the FLSA, Defendants must be employers, which includes individuals who are "acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203(d); Pineda-Herrara v. Da-Ar-Da, Inc., 2011 WL 2133825, at *2 (E.D.N.Y. May 26, 2011). Further, the employees must have been either 1) "engaged in commerce or in the production of goods for commerce" or 2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1); Jacobs v. New York Foundling Hosp., 577 F.3d 93, 96 (2d Cir. 2009). Once these two elements are established, then the Court must determine if the wages received were sufficient in light of the hours worked. See Pineda-

Herrara, 2011 WL 2133825, at *2.

Defendants admitted in their answer to the original complaint that the Tavern was an employer of the Plaintiffs. Answer to the First Amended Complaint, ¶ 1. Plaintiffs have also established through their Rule 56(a)(1) Statement and the record that both Brennan and Reynolds were acting directly in the interest of the employer. See Rule 56(a)(1) Statement ¶¶ 6-8, 10. Reynolds admitted at his deposition that he and Brennan "ran the business." Reynolds Dep. 122:12-14. Both Reynolds and Brennan played a substantial role in the management of employees, including hiring, supervision and salaries. See Reynolds Dep. 105:3-5 & 122:12-14; Brennan Dep. 13-15; see also Herman v. RSR Security Services LTD., 172 F.3d 132, 139 (2d Cir. 1999) (noting that the factors to consider in determining whether an individual qualifies as an employer include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records" (internal quotations omitted)).

Plaintiffs also establish that the Tavern was an "enterprise" under the FLSA. The FLSA defines an "enterprise" as the "related activities performed . . . by any person or persons for a common business purpose . . . ." 29 U.S.C. § 203(r)(1); Jacobs, 577 F.3d at 97. An enterprise is engaged in commerce if it "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has an annual gross volume of sales of at least $500,000. 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Plaintiffs point to multiple products used or sold by the restaurant that originated in other states or countries, such as oranges from California and wines from around the world. Rule 56(a)(1) Statement ¶¶ 18, 20

(citing the Tavern's menus and the affidavits of the Plaintiffs). The Tavern also used out-of-state and national distributors and suppliers such as Tee Jay Distributors and U.S. Foodservice. Rule 56(a)(1) Statement ¶¶ 19, 21 (citing to invoices from Tee Jay Distributors and the depositions of Brennan and Reynolds. Cf. Lamont v. Frank Soup Bowl, Inc., 2001 WL 521815, at *2 (S.D.N.Y. May 16, 2001) (holding that FLSA did not apply to a business merely because three people living outside of the state bought food from the restaurant and there was no evidence that it received any direct shipments of supplies from outside the state). Plaintiffs also provide tax documents from the Tavern showing that gross sales were close to or exceeded $1,000,000 for the years 2000-2004. Further, Defendants admitted in their answer that the Tavern had an annual gross volume of sales or business of at least $500,000 for all relevant times. Answer to First Am. Compl. ¶ 68. Thus, Plaintiffs have established that there is no question of material fact that the Tavern was an enterprise engaged in interstate commerce and that the Defendants were all employers for the purposes of the FLSA.

Thus, the remaining question is whether Defendants violated the overtime provision of the FLSA. All three Plaintiffs worked on average longer than forty hours per week, as demonstrated by their timecards and by the Defendants' own admissions. See Brennan Dep. 65:25-66:22, 78:20-79:5, 81:23-82:22, & 119:24-120:6; Reynolds Dep. 211:24-212:5. Further, Brennan admits that the Plaintiffs were never paid the overtime rate for those hours in excess of forty hours per week. Brennan Dep. 69:1-5, 80:3-5, & 83:11-13.[2] The timecards and income statements in conjunction with the admissions by Brennan and Reynolds are sufficient to

---

[2] While Brennan notes that Plaintiff Lin was paid at a rate slightly in excess of his regular rate for extra hours, this excess is not 50% of his regular rate and does not meet the statutory requirements. Brennan Dep. 109-10.

establish that Defendants violated the overtime provisions of the FLSA.[3]  Therefore, summary judgment is granted to the Plaintiffs for their FLSA claims against the three Defendants addressed here.

    C.    CMWA

The Connecticut wage statute is very similar to the FLSA except that it does not require that the employees or the enterprise be engaged in interstate commerce.  See Scott v. Aetna Services, Inc., 210 F.R.D. 261, 263 n.2 (D. Conn. 2002) (noting that the CMWA "provides wage and overtime guarantees similar to the FLSA").  Its overtime provision requires that employers pay employees for any hours over forty hours a week at a rate of one and one-half times each employee's regular rate.  Conn. Gen. Stat. § 31-76c.  An employer under the CMWA includes business entities funding the salaries of workers as well as individuals "who are in control of, and solely responsible for, all decisions with regard to wages . . . ."  Butler v. Hartford Technical Institute, Inc., 243 Conn. 454, 463-64 (Conn. 1997).  Thus an individual may be personally liable as an employer under the CMWA even if the corporation is also considered an employer, if that

---

[3] Defendants raised in their answer the affirmative defense that the statute of limitations had expired for any claims before three years prior to the filing of the complaint in this case. However, that statute of limitations is subject to equitable tolling because Defendants never posted any notice explaining the FSLA to their employees.  Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677, 695-96 (D. Conn. 2008).  Such a failure is sufficient to warrant tolling, especially when the employees have difficulty speaking English.  See Yu G. Ke v. Saigon Grill, 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008).  Cf. Baba v. Grand Central Partnership, Inc., 2000 WL 1808971, at *2 (S.D.N.Y. Dec. 8, 2000) (denying summary judgment when parties disputed the existence of a notice, defendants had submitted a number of affidavits stating that they had posted the required notice, and plaintiffs sought additional discovery on the issue).  While Plaintiffs and Defendants dispute whether a notice existed, a non-party employee who worked at the Tavern in the summer of 2003 affirmed that no notice was posted, Aff. of Inga Talalaite, ¶ 6, and further the fact that no notice was posted is a fact deemed admitted pursuant to Fed. R. Civ. P. 36(a).

individual "is the ultimate responsible authority to set the hours of employment and to pay wages and is the specific cause of the wage violation." Id. As established above, there is no genuine question of fact that the Plaintiffs were employed by the Tavern or that Brennan and Reynolds were responsible for the employment and salary-setting for the Plaintiffs. Plaintiffs have also satisfied their burden to demonstrate that Plaintiffs each worked overtime but overtime wages were not paid at a rate of one and one-half times their regular rates. Therefore, the Court grants summary judgment as to Plaintiffs' CMWA claim against the three Defendants discussed here.[4]

The U.S. Court of Appeals for the Second Circuit has held that Connecticut's overtime laws are not preempted by the FLSA. Overnight Transp. Co. v. Tianti, 926 F.2d 220, 222 (2d Cir. 1991) (noting that the FLSA "explicitly permits states to mandate greater overtime benefits"). While the amount of damages will be determined at a later date, the Court notes here that Plaintiffs are entitled to damages for both their FLSA claim and their CMWA claim since the Court has granted summary judgment to the Plaintiffs for both claims. See Morales v. Cancun Charlie's, 2010 WL 7865081, at *9 (D. Conn. Nov. 23, 2010) (allowing plaintiff to recover under both FLSA and CMWA because each statute's damages provision served a different purpose).

D. Breach of Contract

Finally, Plaintiff Lin requests summary judgment as to his breach of contract claim against the Tavern. Under Connecticut law, the "'elements of a breach of contract action are the

---

[4] Defendants' failure to post any notice as to their employee's rights under state and federal labor laws tolls the statute of limitations for Plaintiffs' CMWA claim as well. Asp v. Milardo Photography, Inc., 573 F. Supp. 2d 677, 698 (D. Conn. 2008) ("The Plaintiffs should not be penalized for not being aware of a right that they had no means of knowing.")

formation of an agreement, performance by one party, breach of the agreement by the other party and damages.'" Saye v. Old Hill Partners, Inc., 478 F. Supp. 2d 248, 261 (D. Conn. 2007) (quoting Bross v. Hillside Acres, Inc., 92 Conn. App. 773, 780 (2006)). The existence of a breach is "'ordinarily a question of fact.'" Id. (quoting Town of Ridgefield v. Eppoliti Realty Co., 71 Conn. App. 321 (2002)).

Both sides seem to agree that Lin requested and was promised a salary of $14.50 following his promotion to chef in 2005, thus creating an oral wage contract. Lin Affidavit ¶ 10; Brennan Dep. 110:8-12. Lin claims that, in addition to failing to pay him overtime wages, the Tavern failed to pay him his contracted-for salary of $14.50 per hour. Instead, between August 2005 and March 2006, Lin was only paid $13.00 per hour for his first forty hours of work per week, and then from March 2006 until May 2007, Lin was only paid $13.00 for his first thirty hours of work per week. Brennan admitted that the Tavern paid Lin these reduced rates in his deposition. Brennan Dep. 109-10; see also Brennan Dep. 68-69. Therefore, the Tavern breached its oral contract with Lin, and summary judgment is granted as to Lin's breach of contract claim against the Tavern.

### III.  Conclusion

For the reasons set forth above, the Plaintiffs' Motion for Partial Summary Judgment [Dk #116] is GRANTED. The Court will determine the damages related to these claims pursuant to a hearing at a future date. Plaintiffs have also reserved for trial all claims against the fourth defendant, Gaynor Brennan, their breach of the implied covenant of good faith and fair dealing claims, their claims of unjust enrichment and quantum meruit, as well as Plaintiff Wu's and Plaintiff Chen's breach of contract claims.

SO ORDERED this 15th day of November 2011, at Hartford, Connecticut.

    /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**