## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DEHUA LIN, XIUFANG WU, and GUO CHEN, | |
| *Plaintiffs*, | Civil Action No. 3:07-cv-01658 |
| v. | |
| THOMAS M. BRENNAN, ELIAS B. REYNOLDS,  MIANUS RIVER TAVERN, LLC, MAUREEN REYNOLDS, and TB & TZ LLC, | August 22, 2012 |
| *Defendants*. | |

## <u>SUPPLEMENTAL COMPLAINT</u>

1.      Plaintiffs Lin Dehua, Xiufang Wu, and Guo Chen are former employees of Augie's Mianus River Tavern, a bar and restaurant in Cos Cob, Connecticut.  Each Plaintiff worked long hours each week— one averaged approximately 80 hours per week, the second averaged approximately 66 hours per week, and the third averaged approximately 68 hours per week. In clear contravention of federal and state law, the restaurant employers never paid Plaintiffs overtime. Further, when the restaurant closed, Plaintiffs were still owed wages for several weeks, and despite their attempts to collect from the Defendants, their former employers, Plaintiffs still have not received full payment for their labor. Plaintiffs bring this action in order to recover monies owed to them for both unpaid wages and unpaid overtime.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332 and 29 U.S.C.

§ 216(b).  This Court also has supplemental jurisdiction over Plaintiffs' state law claims

pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the

events giving rise to this action occurred within this district, and Defendants are located,

reside, or do business in this district. Venue is also proper pursuant to 28 U.S.C. §

1391(c), as Defendants Mianus River Tavern, LLC, and TB & TZ, LLC are subject to

personal jurisdiction in the state of Connecticut.

## PARTIES

4.      Plaintiff Dehua Lin worked as an assistant chef, and then as head chef, at Augie's

Mianus River Tavern from the time the restaurant opened in 1998, until the restaurant

closed on or about May 29, 2007.  He worked an average of approximately 80 hours per

week throughout the course of his employment.

5.      Mr. Lin is a resident of the state of New York, and at all times relevant hereto was

a resident of the state of New York.

6.      Plaintiff Xiufang Wu worked as an assistant chef at Augie's Mianus River Tavern

from in or around June 2005 until the restaurant closed on or about May 29, 2007. She

worked an average of 66 hours per week throughout the course of her employment.

7.      Ms. Wu is a resident of the state of New York, and at all times relevant hereto

was a resident of the state of New York.

8.      Plaintiff Guo Chen worked as an assistant chef at Augie's Mianus River Tavern from in or around February 2007 until the restaurant closed on or about May 29, 2007. He worked an average of 68 hours per week during the course of his employment.

9.      Mr. Chen is a resident of the state of New York, and at all times relevant hereto was a resident of the state of New York.

10.     Defendant Mianus River Tavern, LLC, is a Limited Liability Company that registered in Connecticut in 1998.

11.     Defendant Mianus River Tavern LLC owned and operated a bar and restaurant in Cos Cob, Connecticut, named Augie's Mianus River Tavern ("the restaurant"). The restaurant was located at 136 River Rd. Extension, Cos Cob, CT 06807-2540. The establishment closed in or about May 2007.

12.     Defendant Thomas Brennan was a member of Mianus River Tavern, LLC. Defendant Thomas Brennan operated and managed Augie's Mianus River Tavern. Defendant Thomas Brennan is an individual separate and distinct from Defendant Mianus River Tavern, LLC.

13.     Defendant Thomas M. Brennan resides at 120 Tunxis Hill Rd. Cut-off, Fairfield, CT 06825.  Defendant Thomas Brennan is a resident of the state of Connecticut, and at all times relevant hereto was a resident of the state of Connecticut.

14.     Defendant Elias ("Eli") B. Reynolds was a member of Mianus River Tavern, LLC. Defendant Reynolds is an individual separate and distinct from Defendant Mianus River Tavern, LLC.

15.     Defendant Reynolds resides at 126 Arbor Terrace, Fairfield, CT 06890. Defendant Reynolds is a resident of the state of Connecticut, and at all times relevant hereto was a resident of the state of Connecticut.

16.     Defendant Maureen Reynolds is the wife of Defendant Eli Reynolds.  Maureen Reynolds received transfers from Eli Reynolds of126 Arbor Terrace, Fairfield, CT 06890 in 2008, and his interest in his bank account in 2009.

17.     Defendant Maureen Reynolds resides at 126 Arbor Terrace, Fairfield, CT 06890. She is a resident of the state of Connecticut, and at all times relevant hereto was a resident of the state of Connecticut.

18.     Defendant TB & TZ, LLC (the "LLC") is a domestic limited liability corporation incorporated in the state of Connecticut in March 2009.  The LLC received transfers from Thomas M. Brennan of his interests in 118-120 Tunxis Hill Road Cut-off, Fairfield, CT 06825, in November 2010.

19.     Defendant TB & TZ, LLC's business address is 120 Tunxis Hill Road Cut-off, Fairfield, CT 06825; its statutory agent is Thomas M. Brennan.


**STATEMENT OF FACTS**

Plaintiff Dehua Lin

20.     Defendant Thomas Brennan hired Mr. Lin to work at Augie's River Tavern when it first opened in 1998. Mr. Lin worked at the restaurant until it closed on or about May 28, 2007.

21.     Mr. Lin generally worked approximately 80 hours each week. He worked from approximately 9 a.m. to 10 p.m. each Sunday, Tuesday, Wednesday, and Thursday and from approximately 9 a.m. to 11 p.m. on each Friday and Saturday.

22.     At no point during his employment did Mr. Lin observe any notices posted conspicuously in the restaurant that explained the Fair Labor Standards Act, as prescribed by the Wage and Hour Division, as is required by law.

23.     Mr. Lin worked in the kitchen, first as an assistant chef and then as head chef.  He became head chef in or around 2003.

24.     As part of his job duties, Mr. Lin handled and worked with goods, including but not limited to food products, which had traveled in interstate commerce.

25.     As part of his job duties, Mr. Lin regularly and often accepted on behalf of the restaurant substantial shipments of goods or products that had traveled in interstate commerce.

26.     As part of his job duties, Mr. Lin regularly and often placed good for orders or products that had traveled in interstate commerce.

27.     When Defendants first hired Mr. Lin, he was an assistant chef. Defendants promised him a rate of pay of $13 per hour.

28.     Approximately four years after Mr. Lin began working at the restaurant, in 2003, the head chef became ill. Defendant Thomas Brennan promoted Mr. Lin to head chef. Shortly after Mr. Lin took this position, Defendants increased Mr. Lin's salary to $14.50 per hour.

29.     Throughout Mr. Lin's tenure at the restaurant, when the Defendants paid him, they would pay him by check for approximately 40 hours a week at a rate of $13 per

hour. For additional time worked (generally an additional 40 hours), the Defendants paid Mr. Lin in cash.

30.     When Mr. Lin received his pay raise in 2003, his paychecks still reflected the rate of $13 per hour, and each paycheck included approximately 40 hours per week. Defendants never included the extra $1.50 per hour in his pay check.

31.     However, Defendants began to pay him in cash at the hourly rate of $14.50 for his hours worked in excess of 40 per week.

32.     Defendants paid Mr. Lin in cash in order to avoid reporting requirements, detection of his failure to pay overtime, and applicable taxes.

33.     Defendants did not pay Mr. Lin statutorily mandated overtime pay for each hour worked over 40 in any given week.

34.     When the restaurant closed for business in May 2007, Defendants owed Mr. Lin approximately 9 weeks of pay. Mr. Lin received a check from the Defendants for $3,000, which did not cover the amount owed to him.

35.     After Mr. Lin received the check for $3,000, he contacted Defendant Thomas Brennan and demanded the balance of his unpaid wages.

36.     Mr. Lin and Defendant Thomas Brennan were unable to come to an agreeable resolution.  To date, Mr. Lin still has not received the balance of his unpaid wages.

37.     Mr. Lin's damages exceed $75,000.

Plaintiff Xiufang Wu

38.      Ms. Wu is the wife of Mr. Lin.

39.     Defendant Thomas Brennan hired Ms. Wu on or around June 21, 2005.

40.     Ms. Wu worked at Augie's Mianus River Tavern until it closed, on or about May 29, 2007.

41.     Ms. Wu was employed as an assistant chef.  She would make salads and would prepare food to be cooked. When Mr. Lin was not working, she worked as the head chef.

42.     As part of her job duties, Ms. Wu handled and worked with goods, including but not limited to food products, which had traveled in interstate commerce.

43.     Ms. Wu generally worked approximately 66 hours per week. She typically worked Monday through Saturday, and would usually work approximately 11 hours each day.

44.     At no point during her employment did Ms. Wu observe any notices posted conspicuously in the restaurant that explained the Fair Labor Standards Act, as prescribed by the Wage and Hour Division, as is required by law.

45.     When Ms. Wu was hired, she was promised a pay rate of $10 per hour.

46.     Defendants never paid Ms. Wu overtime for hours worked in excess of 40 each week.

47.     When the restaurant closed, Defendants owed Ms. Wu approximately 8 weeks of pay. Shortly thereafter, she received a check from Defendants for $1500, which did not cover the full amount of wages she was owed.  Ms. Wu still has not received the balance of her unpaid wages.

Plaintiff Guo Chen

48.     Mr. Chen was hired by Defendant Thomas Brennan on or around February 2007. He worked at Augie's Mianus River Tavern until it closed, on or about May 29, 2007.

49.     Mr. Chen was employed as an assistant chef. He would work the grill and the deep fryer. When the regular salad bar attendant was not working, he worked at the salad bar.

50.     As part of his job duties, Mr. Chen handled and worked with goods, including but not limited to food products, which had traveled in interstate commerce.

51.     Mr. Chen generally worked approximately 68 hours per week. He typically worked Monday through Saturday, and would usually work approximately 11 hours each day Monday through Thursday, and then 12 hours a day on Friday and Saturday.

52.     At no point during his employment did Mr. Chen observe any notices posted conspicuously in the restaurant that explained the Fair Labor Standards Act, as prescribed by the Wage and Hour Division, as is required by law.

53.     When Mr. Chen was hired, he was promised a pay rate of $11 per hour.

54.     Mr. Chen was never paid overtime for hours worked in excess of 40 each week.

55.     When the restaurant closed, Defendants owed Mr. Chen approximately 8 weeks of pay. Shortly thereafter, he received a check from Defendants for $2000, which did not cover the full amount of wages he was owed.  Mr. Chen still has not received the balance of his unpaid wages.

<u>Restaurant Operations</u>

56.     When Mr. Lin first began working at the restaurant, there was a manager who oversaw daily operations of the restaurant. In or around 2005, however, the manager left the restaurant. Defendant Thomas Brennan and Defendant Eli Reynolds assumed all of the managerial duties of the restaurant.

57.     Defendants Thomas Brennan and Eli Reynolds were at all times acting as agents of Defendant Mianus River Tavern and were principals in the LLC.

58.     At all relevant times, Plaintiffs were working for the benefit of Mianus River Tavern, LLC.

59.     Defendant Thomas Brennan was responsible for all employment decisions including hiring and firing, salary, performance reviews, and scheduling.

60.     Defendant Thomas Brennan personally paid Plaintiffs. He also managed the work conducted by Plaintiffs and supervised the quality of all food cooked.

61.     Defendant Thomas Brennan maintained all employment records of Plaintiffs.

62.     Defendant Thomas Brennan came to the restaurant every day to oversee operations.

63.     Defendant Eli Reynolds regularly worked at the restaurant as a bartender until about 2005.

64.     Defendant Eli Reynolds supervised the work of the Plaintiffs and oversaw the quality of food cooked at the restaurant.

65.     Defendant Eli Reynolds made managerial decisions regarding the content of the restaurant's menu.

66.     Defendant Eli Reynolds also had the power to hire and fire employees of the restaurant at will.

67.     For all relevant times, the Defendants failed to maintain records as required by law of hours worked by Plaintiffs and wages paid to them.

68.     At all times relevant hereto, Augie's Mianus River Tavern had an annual gross volume of sales or business done not less than $500,000.

69.     A significant portion of the restaurant's business transactions were made in cash. For example, a substantial portion of payroll, both to Plaintiffs and other employees, was conducted via cash transactions.

70.     At all times relevant hereto, Augie's Mianus River Tavern had employees handling, selling, or otherwise working on goods or materials, including but not limited to food products and liquor, that have been moved in or produced for interstate commerce.

71.     At all relevant times Defendants failed to post and keep posted notices explaining the Fair Labor Standards Act, as prescribed by the Wage and Hour Division, in conspicuous places in their establishment, as is required by law.

Transfer of Assets

72.     Plaintiffs commenced this action on November 13, 2007 and completed service on Defendants Thomas Brennan, Eli Reynolds, Mianus River Tavern LLC, and then-defendant Gaynor Brennan on November 27, 2007.

73.     At the time Plaintiffs' claims arose, Eli Reynolds held joint title to 126 Arbor Terrace, Fairfield, CT 06890 with his wife, Defendant Maureen Reynolds.

74.     In 2008, with actual notice of Plaintiffs' suit, Defendant Eli Reynolds transferred his title to 126 Arbor Terrace to his wife, Defendant Maureen Reynolds.

75.     Defendant Eli Reynolds transferred 126 Arbor Terrace to Defendant Maureen Reynolds in response to litigation.

76.     Defendant Eli Reynolds made the transfer of his interest in 126 Arbor Terrace without receiving reasonably adequate value in consideration.

77.     The transfer was of substantially all of Defendant Eli Reynolds' assets.

78.     At the time of the transfer, Defendant Eli Reynolds believed or reasonably should have believed that he would incur debts beyond his ability to pay them as they came due.

79.     The transfer of 126 Arbor Terrace left Defendant Eli Reynolds insolvent and unable to pay his debts and legal liabilities.

80.     Defendant Eli Reynolds still resides at 126 Arbor Terrace, Fairfield, CT.

81.     At the time Plaintiffs' claims arose, Defendant Eli Reynolds held a joint deposit account at J. P. Morgan Chase Bank, N.A., d/b/a Chase, with Defendant Maureen Reynolds.

82.     In 2009, with actual notice of Plaintiffs' claims, Defendant Eli Reynolds abandoned his interest in the joint bank account.

83.     During his deposition in April 2010, Defendant Eli Reynolds admitted to transferring his interest in the joint bank account to Defendant Maureen Reynolds in response to litigation.

84.     At the time Plaintiffs' claims arose, Defendant Thomas M. Brennan held title in tenancy-in-common to 118-120 Tunxis Hill Road Cut-off, Fairfield, CT 86825 with Todd Zubrinsky.

85.     In this litigation, Plaintiffs served interrogatories and requests for production on Defendant Thomas M. Brennan on or about March 5, 2010, in which Plaintiffs inquired about Defendant Brennan's assets.  Brennan failed to disclose his interest in the property or his subsequent transfer in response to Plaintiffs' Interrogatories.

86.     In August 2010, Plaintiffs deposed Defendant Brennan.

87.     In November 2010, with actual notice of Plaintiffs' claims, Defendant Thomas M. Brennan transferred his interest in 118-120 Tunxis Road Cut-off to Defendant TB & TZ, LLC, of which he is a member.

88.     Defendant Thomas M. Brennan made the transfer to Defendant TB & TZ, LLC without receiving reasonably adequate value in consideration.

89.     The transfer was of substantially all of Defendant Thomas M. Brennan's assets.

90.     At the time of the transfer, Defendant Thomas M. Brennan believed or reasonably should have believed that he would incur debts beyond his ability to pay them as they came due.

91.     The transfer of 118-120 Tunxis Hill Road Cut-off by Defendant Thomas M. Brennan to Defendant TB & TZ, LLC left Defendant Brennan insolvent and unable to pay his debts and legal liabilities.

92.     Defendant Thomas M. Brennan still resides at 120 Tunxis Hill Road Cut-off, Fairfield, CT.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT ("FLSA")

93.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

94.     At all times relevant to this case, Defendants Mianus River Tavern, Thomas Brennan, and Eli Reynolds were joint and/or integrated employers within the meaning of 29 U.S.C. § 203(d) and 29 C.F.R. § 791.2.

95.     Defendants failed to pay Plaintiffs overtime pay for all hours that they worked in excess of forty per week for each week in violation of 29 U.S.C. § 207(a)(1).

96.     Because Defendants violations of FLSA were neglectful of prevailing law, employed fraudulent bookkeeping and pay arrangements, and demonstrated disregard for the requirements of FLSA, Defendants violations of FLSA were willful.

97.     Because Defendants failed to post and keep posted a notice explaining the FLSA in conspicuous places in their establishment, so as to permit their employees to readily observe a copy, and because the Plaintiffs had no other knowledge, actual or constructive, of their rights under the FLSA, Plaintiffs are entitled to the equitable tolling of their FLSA claims.

98.     As a result of these violations, Plaintiffs suffered damages.

99.     Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under federal law.

100.    Plaintiffs are entitled to an award of damages for unpaid wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial. 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**CONNECTICUT WAGE AND HOUR LAW**

101.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

102.    Plaintiffs bring this claim under §§ 31-68 and 31-72 of Connecticut's Wage and Hour Law, Conn. Gen. Stat. §§ 31-58 *et seq*., against all Defendants.

103.    At all relevant times, Defendants Mianus River Tavern, Thomas Brennan, and Eli Reynolds have been "employers" within the meaning of Conn. Gen. Stat. §§ 31-58(e) and 31-71a(1). At all relevant times, Defendants employed Plaintiffs within the meaning of

Conn. Gen. Stat. § 31-58(h). At all relevant times, Plaintiffs were employees of Defendants within the meaning of §§ 31-58(f) and 31-71a(2).

104.  Defendants, knowingly and in bad faith,

    a.  Failed to pay overtime wages due to Plaintiffs for hours worked in excess of forty per week, in violation of Conn. Gen. Stat. §§ 31-76b and 31-76c;

    b.  Withheld wages from Plaintiffs on termination of employment, in violation of Conn. Gen. Stat. §§ 31-70, 31-71(b), and 31-71c;

105.  Because Defendants failed to post and keep posted a notice explaining Connecticut's Wage and Hour Law in conspicuous places in their establishment, so as to permit their employees to readily observe a copy, and because the Plaintiffs had no other knowledge, actual or constructive, of their rights under Connecticut Wage and Hour Law, Plaintiffs are entitled to the equitable tolling of their Connecticut Wage and Hour Law claims.

106.  As a result, Plaintiffs suffered damages.

107.  Defendants are jointly and severally liable to Plaintiffs for these violations of their rights under state law.

108.  Plaintiffs are entitled to an award of damages for unpaid wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as well as attorneys' fees, in an amount to be determined at trial. Conn. Gen. Stat. §§ 31-68, 31-72.

**THIRD CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

109.  Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

110.    Defendants collectively entered into oral, written, and/or implied contracts with Plaintiffs and each party's acceptance was supported by good and valuable consideration.

111.    Plaintiffs fulfilled their contractual obligations by laboring for the benefit of Defendants.

112.    Defendants breached the contracts with Plaintiffs by failing to pay contractually established wages for work performed by Plaintiffs.

113.    Defendants' contracts with Plaintiffs implied payment of overtime wages, in accord with federal and state law.

114.    Because of Defendants' breach of contract, Plaintiffs suffered from a loss of expected wages.

115.    Plaintiffs are entitled to damages for Defendants' contract breaches for 6 years preceding the filing of this complaint, pursuant to Conn. Gen. Stat. §§ 52-576.

116.    Plaintiffs are entitled to monetary damages equal to the amount specified in oral, written, and/or implied contracts entered with Defendants, plus interest.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**

117.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

118.    Defendants collectively entered into written and/or oral contracts with Plaintiffs and each party's acceptance was supported by good and valuable consideration.

119.    Plaintiffs fulfilled their contractual obligations by laboring for the benefit of Defendants.

15

120.    Defendants, in bad faith, denied Plaintiffs the benefit of the contract by failing to pay the contractually established wages.

121.    Defendants' bad faith is demonstrated by Defendant's failure to pay contractually required wages, failure to pay statutorily mandated overtime, and by Defendants' manipulation of payment schedules that were to the detriment of Plaintiffs.

122.    Because of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered from a loss of expected wages.

123.    Plaintiffs are entitled to damages for Defendants' contract breaches for 6 years preceding the filing of this complaint, pursuant to Conn. Gen. Stat. §§ 52-576.

124.    Plaintiffs are entitled to monetary damages equal to the amount specified in contracts entered with Defendants, plus interest.

**FIFTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT & QUANTUM MERUIT**

125.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

126.    By laboring at Augie's Mianus River Tavern, Plaintiffs provided benefits to Defendants.

127.    Plaintiffs expected to be compensated for the labor they provided to Defendants. Defendants' unjust failure to pay Plaintiffs wages for all labor performed constituted a distinct detriment to the Plaintiffs.

128.    Accordingly, Plaintiffs are entitled to money damages equal to the reasonable value of the labor provided to Defendants, plus interest.

## SIXTH CLAIM FOR RELIEF
## UNIFORM FRAUDULENT TRANSFER ACT
## AS TO 126 ARBOR TERRACE

129.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

130.   Plaintiffs bring this claim under §§ 52-552e and 52-552f of Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.* against Defendants Eli and Maureen Reynolds.

131.   Defendant Eli Reynolds transferred his interest in 126 Arbor Terrace, Fairfield, CT to Defendant Maureen Reynolds: (1) with actual notice of Plaintiffs' claims; (2) in response to litigation; (3) without reasonably adequate consideration; (4) with actual or constructive belief that such transfers would render him unable to pay his debts and liabilities; (5) rendering himself insolvent; (6) while retaining control over the properties. Therefore, Defendant Eli Reynolds acted with fraudulent intent under Connecticut Law.

132.   As a result of this transfer, Plaintiffs suffered and will continue to suffer damages.

133.   Plaintiffs are entitled to an order invalidating the transfer of 126 Arbor Terrace and reconveying the joint interest in the property nunc pro tunc to Defendant Eli Reynolds.

## SEVENTH CLAIM FOR RELIEF
## UNIFORM FRAUDULENT TRANSFER ACT
## AS TO REYNOLDS JOINT BANK ACCOUNT

134.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

135.    Plaintiffs bring this claim under §§ 52-552e and 52-552f of Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.* against Defendants Eli and Maureen Reynolds.

136.    Defendant Eli Reynolds abandoned his interest in a bank account at J.P. Morgan Chase Bank, N.A which he formerly held jointly with Defendant Maureen Reynolds. Defendant Reynolds admittedly acted with fraudulent intent in making this transfer. Furthermore, he made the transfer: (1) with actual notice of Plaintiffs' claims; (2) in response to litigation; (3) without reasonably adequate consideration; (4) with actual or constructive belief that such transfers would render him unable to pay his debts and liabilities; (5) rendering himself insolvent; (6) while retaining control over the properties. Therefore, Defendant Eli Reynolds acted with fraudulent intent under Connecticut Law.

137.    As a result of this transfer, Plaintiffs suffered and will continue to suffer damages.

138.    Plaintiffs are entitled to an order invalidating the abandonment of the bank account and reconveying the joint interest in the account nunc pro tunc to Defendant Eli Reynolds.

### EIGHTH CLAIM
### UNIFORM FRAUDULENT TRANSFER ACT
### AS TO 118-120 TUNXIS HILL ROAD CUT-OFF

139.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this complaint as if fully set forth herein.

140.    Plaintiffs bring this claim under §§ 52-552e and 52-552f of Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a *et seq.* against Defendants Thomas M. Brennan and TB & TZ, LLC.

141.    Defendant Thomas M. Brennan transferred his interest in 118-120 Tunxis Hill Road Cut-off, Fairfield, CT to Defendant TB & TZ, LLC: (1) with actual notice of Plaintiffs' claims; (2) without reasonably adequate consideration; (3) with actual or constructive belief that such transfers would render him unable to pay his debts and liabilities; (4) rendering himself insolvent; (5) while retaining control over the property. Therefore, Defendant Thomas M. Brennan acted with fraudulent intent under Connecticut Law.

142.    As a result of this transfer, Plaintiffs suffered and will continue to suffer damages.

143.    Plaintiffs are entitled to an order invalidating the transfer of 118-120 Tunxis Hill Road Cut-off and reconveying the joint interest in the property nunc pro tunc to Defendant Thomas M. Brennan.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

    a.   Award Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as provided by the FLSA, 29 U.S.C. § 216(b), in an amount to be determined at trial;

    b.   Award Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, as provided by Conn. Gen. Stat. § 31-68 and § 31-72, in an amount to be determined at trial;

c.  Award Plaintiffs compensatory damages for Defendants' violations of Connecticut common law (including breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of contract implied through quantum meruit), plus interest;

d.  Order the return of assets fraudulently transferred by Defendants Eli Reynolds and Thomas M. Brennan and their reconveyance nunc pro tunc to Defendants.

e.  Award attorneys' fees and costs to Plaintiffs for legal services provided by the Jerome N. Frank Legal Services Organization pursuant to 29 U.S.C. § 216(b) (FLSA), Conn. Gen. Stat. §§ 31-68(a) and 31-72 (Connecticut Wage and Hour Law), and Conn. Gen. Stat. § 52-552h(a)(3)(C) (UFTA); and

f.  Grant such additional and further relief as the Court deems just and proper.

Dated: August 22, 2012

Respectfully submitted,

___ __/s/_____

Michael Wishnie (ct27221), *Supervising Attorney*
Joshua Rosenthal, *Law Student Intern*
Jerome N. Frank Legal Services Organization
Yale Law School
127 Wall St.
New Haven, CT 06511
(203) 432-4800
michael.wishnie@yale.edu

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2012, a copy of the foregoing supplemental complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of this Court's electronic filing system and by mail to the following:

Mianus River Tavern LLC
c/o Thomas M. Brennan
120 Tunxis Hill Rd. Cut-Off
Fairfield, CT 06825

Thomas M. Brennan
120 Tunxis Hill Rd. Cut-Off
Fairfield, CT 06825

Elias B. Reynolds
126 Arbor Terrace
Fairfield, CT 06890

Parties may access this filing through the Court's CM/ECF System.

Dated: 8/22/2012                         _____/s/ Lora Johns_____
                                                          Lora Johns, *Law Student Intern*